UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: | § § § | CASE NO: 18-12064 |
| SHARON SYLVESTER, | § § | CHAPTER 7 |
| DEBTOR. | § § § | SECTION "A" |

### ORDER AND REASONS

The Court held a hearing on April 8, 2020, to resolve the *Reurged Motion for Allowance and Payment of Administrative Expense Claim* (the "Motion"), [ECF Doc. 270], filed by Beau Sagona and The Derbes Law Firm ("Sagona"),[1] seeking $1,013.30 in costs as an allowed administrative expense under § 503(b)(3)(B) and $11,643.00 in attorneys' fees as an allowed administrative expense under § 503(b)(4). The Debtor filed two Oppositions to the Motion (the "Oppositions"), [ECF Docs. 277 & 282], and Sagona filed a Reply Brief in support of the Motion, [ECF Doc. 279]. Appearances were as noted on the record. [ECF Doc. 284]. At the hearing, the Court took the matter under advisement. Having considered the record in its entirety, the Motion, the exhibits attached thereto, the Oppositions, the Reply Brief, the arguments of the parties, and

---

[1] Prepetition, Beau Sagona, an attorney with and member of the Derbes Law Firm, served as the Special Master in the *Succession of Anthony Sylvester, Sr.*, No. 616-471, which was filed in the 24th Judicial District Court for the Parish of Jefferson, State of Louisiana. On January 19, 2018, Beau Sagona received a Judgment in his favor, fixing his compensation as Special Master in the amount of $45,761.42. *See* Proof of Claim No. 1, Ex. 1. Of that amount, the state court taxed half to Sharon Sylvester, who later filed this bankruptcy case on August 7, 2018, and half to Joyce Sylvester, the independent executrix appointed for the succession. *See id*. Although the Debtor objects to compensation of 3.50 hours of legal work billed by Beau Sagona of the total request for compensation of 49.2 hours of legal work requested by the Derbes Law Firm, the Debtor presented no authority that suggests that a creditor of the estate who is also an attorney cannot be compensated for the legal work he performed pursuant to § 503(b)(3)(B); therefore, that objection is overruled. *See* ECF Doc. 277, at 3.

the applicable law, the Court makes the following findings and GRANTS the Motion in part and DENIES it in part.

## JURISDICTION AND VENUE

This Court has jurisdiction to grant the relief provided for herein pursuant to 28 U.S.C. § 1334 and the Order of Reference of the District Court dated April 11, 1990. The matters presently before the Court constitute core proceedings that this Court may hear and determine on a final basis under 28 U.S.C. § 157(b).

## NOTICE

Notice of the pleadings was sufficient and constituted the best notice practicable. All persons affected by this Order were afforded a full and fair opportunity to be heard prior to and during the hearing on the same. Notice of the relief granted herein has been given to all persons affected by this decision and is in full compliance with due process.

## FINDINGS OF FACT

On October 21, 2017, 290 days before the filing of the bankruptcy petition, the Debtor transferred a piece of immovable property 1216-1218 South Rampart Street, New Orleans, Louisiana 70113 (the "Property") to her children, Carl Gabriel, Angelique Gabriel, and Angelica Gabriel via an Act of Donation. On August 7, 2018, the Debtor filed a voluntary petition for relief under chapter 13 of the Bankruptcy Code. On October 23, 2018, the Court authorized Sagona to file an adversary complaint seeking return of the Property to the bankruptcy estate. [ECF Doc. 79, at 13].

On November 1, 2018, Sagona filed that Adversary Complaint. [Adv. Pro. 18-1136, ECF Doc. 1]. After filing the Adversary Complaint, Sagona prepared and filed a Motion for Summary Judgment on January 4, 2019. [Adv. Pro. 18-1136, ECF Doc. 19]. On February 19, 2019, the Court granted the Motion for Summary Judgment and ordered the prepetition donation of the

Property to be avoided pursuant to 11 U.S.C. §§ 548(a)(1)(A) and (B), and Louisiana Civil Code art. 2036, as made applicable to these proceedings through 11 U.S.C. § 544(b)(1), finding that the donation was a voidable transfer to insiders within the one-year period of § 548. [Adv. Pro. 18-1136, ECF Doc. 35].

On April 12, 2019, Sagona filed a *Motion for Allowance and Payment of Administrative Expense Claims* ("Motion for Administrative Expense"). [ECF Doc. 118].[2] On June 5, 2019, this Court granted that Motion and awarded Sagona an allowed administrative expense claim for $12,647.30 for the work performed in avoiding the prepetition transfer of the Property. [ECF Doc. 168]. Although she failed to object timely to Sagona's Motion for Administrative Expense, on June 19, 2019, the Debtor nevertheless filed a *Motion to Reconsider, Alter and/or Amend Order and Incorporated Memorandum,* [ECF Doc. 186], and a *Motion to Vacate Judgment or Order and Incorporated Memorandum,* [ECF Doc. 188], both of which the Court denied, [ECF Doc. 209]. On July 16, 2019, Debtor filed a Notice of Appeal, [ECF Doc. 219], appealing the matter to the United States District Court of the Eastern District of Louisiana. *See In re Sharon Sylvester*, No. 19-11716 (E.D. La. July 16, 2019).[3]

On March 9, 2020, the District Court vacated the ruling of this Court related to the Motion for Administrative Expense and remanded the matter to this Court for further proceedings consistent with her opinion. The Order and Reasons stated:

> In this case, on the record before it, the court cannot discern what analysis was employed by the bankruptcy court in its fee determination, nor the basis for the award . . . . Thus, it is unclear what the bankruptcy court considered in making its ruling, and how the bankruptcy court concluded the fee request was reasonable . . . . No explanation for the fee award made in this case has been provided, and thus this court cannot meaningfully review it. Thus, this matter must be remanded to the

---

[2] On April 18, 2019, the Court converted the case to one under chapter 7. [ECF Doc. 131].

[3] The Debtor's bankruptcy case was originally assigned to another judge of this Court; however, the undersigned received the case at the start of her September 9, 2019 term.

3

bankruptcy court for a redetermination, consistent with this opinion, of what amount of compensation should be awarded to appellee. The fee determination should be accompanied by an explanation of how the court arrived at the award.

[EDLA No. 19-11716, ECF Doc. 23, at 10–11].

On remand, Sagona filed the instant Motion, re-urging its prior Motion for Administrative Expense. [ECF Doc. 270]. The Debtor responded in opposition, asserting issues of timeliness, vagueness, and reasonableness. [ECF Docs. 277 & 282].

## CONCLUSIONS OF LAW

### A. Administrative Expense Claims Under §§ 503(b)(3) and (b)(4)

Section 503(b) of the Bankruptcy Code states in pertinent part that "[a]fter notice and hearing, there shall be allowed, administrative expenses" for "the actual, necessary expenses, other than compensation and reimbursement specified in paragraph (4) of this subsection, incurred by . . . a creditor that recovers, after the court's approval, for the benefit of the estate any property transferred or concealed by the debtor." 11 U.S.C. § 503(b)(3)(B). Section 503(b)(4) further permits an allowed administrative expense for

> reasonable compensation for professional services rendered by an attorney or an accountant of an entity whose expense is allowable under subparagraph (A), (B), (C), (D), or (E) of paragraph (3) of this subsection, **based on the time, the nature, the extent, and the value of such services, and the cost of comparable services other than in a case under this title**, and reimbursement for actual, necessary expenses incurred by such attorney or accountant.

11 U.S.C. § 503(b)(4) (emphasis added).

"If a creditor would have its expenses allowed under any one of the sub-provisions of § 503(b)(3), that creditor can be allowed administrative expense status under § 503(b)(4), for claims for attorney's fees incurred by that creditor in connection with the circumstances that gave rise to the claim under § 503(b)(3)." *In re Blount,* 276 B.R. 753, 757 (Bankr. M.D. La. 2002). Section 503(b)(4), which authorizes an administrative fee award for professional services, "is

expressly dependent upon a claimant qualifying for an administrative expense award in subsection (3), which requires that expenses, other than professional fees, be actual and necessary." *Hall Fin. Grp., Inc. v DP Partners, Ltd. P'ship (In re DP Partners Ltd. P'ship),* 106 F.3d 667, 674 (5th Cir. 1997). Whether Congress intended to impose different standards by using the words 'actual and necessary' in one provision [§ 503(b)(3)] and 'reasonable' in another [§ 503(b)(4)] is unclear." *Id.* "The import of subsection (4), however, is clear. Congress intended for the judge to evaluate the listed factors in setting a reasonable fee." *Id.*

### B. Standard for Reasonable Attorneys' Fees

The Fifth Circuit uses a "lodestar" method for determining attorneys' fees. *See Shipes v. Trinity Indus.*, 987 F.2d 311, 319–20 (5th Cir. 1993). To tally the lodestar number, courts multiply "the number of hours an attorney would reasonably spend for the same type of work by the prevailing hourly rate in the community." *Rodriguez v. Countrywide Home Loans, Inc. (In re Rodriguez)*, 517 B.R. 724, 731 (Bankr. S.D. Tex. 2014) (citing *id.* at 319). A court may then adjust the lodestar number up or down depending upon the presence or absence of the twelve factors identified in *Johnson v. Georgia Highway Express,* 488 F.2d 714 (5th Cir. 1974) (assessing reasonableness of attorneys' fees under § 706(k) of Title VII of the Civil Rights Act of 1964), *abrogated on other grounds, Blanchard v. Bergeron*, 489 U.S. 87 (1989). *See In re Cahill,* 428 F.3d 536, 539–40 (5th Cir. 2005) (applying the *Johnson* factors in a bankruptcy context); *In re Harris-Nutall*, 572 B.R. 184, 197 (Bankr. N.D. Tex. 2017) (same); *In re New Town Dev. Grp., L.L.C.*, No. 09-10029, 2010 WL 1451480 (Bankr. M.D. La. Apr. 9, 2010) (same); *In re Energy Partners, Ltd.*, 422 B.R. 68 (Bankr. S.D. Tex. 2009) (same).

The *Johnson* factors include: (1) time and labor required; (2) novelty and difficulty of the issues; (3) skill required to perform the legal services properly; (4) preclusion of other

employment; (5) customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by client or circumstances; (8) amount involved and results obtained; (9) experience, reputation, and ability of the attorneys; (10) undesirability of the case; (11) nature and length of the professional relationship with the client; and (12) award in similar cases. *See* 488 F.2d at 717–19. But "[t]he lodestar method is presumed to account for four of the twelve *Johnson* factors—the novelty and complexity of the issues, the special skill and experience of counsel, the quality of representation, and the results obtained from litigation." *In re Rodriguez*, 517 B.R. at 730. The Fifth Circuit affords courts considerable discretion in awarding attorneys' fees. *See Transamerican Natural Gas Corp. v. Zapata P'ship, Ltd. (In re Fender)*, 12 F.3d 480, 487 (5th Cir. 1994).

### C. Sagona's Administrative Expense Claim

Sagona requests $1,013.30 in costs and $11,643.00 in attorneys' fees that it incurred in successfully prosecuting the Adversary Proceeding to be paid as allowed administrative expenses under §§ 503(b)(3)(B) and (b)(4). Those sections specifically are intended "to provide a statutory basis for a court to approve actions by a creditor, instead of a trustee, to recover property transferred or concealed by the debtor." *Sanner v. Poli (In re Poli)*, 298 B.R. 557, 568 (Bankr. E.D. Va. 2003). "The creditor in these cases must be acting for the benefit of the estate as a whole, not just for that creditor individually." *Id*.

> Recovery under § 503(b)(3)(B) requires
>
> first, that the status of the party seeking administrative expense recovery be a creditor of the debtor. Second, the statute requires that the creditor be one, "that recovers . . . any property transferred or concealed by the debtor." Third, the statute commands that the recovery of property transferred or concealed by the debtor be "for the benefit of the estate." The statute also dictates a fourth requirement, court approval.

*In re Courtney*, 359 B.R. 883, 886 (Bankr. E.D. Tenn. 2007) (quoting *In re Blount,* 276 B.R. 753, 758–59 (Bankr. M.D. La. 2002)). If Sagona qualifies for an administrative expense award under § 503(b)(3)(B), then it may also be allowed administrative expense status under § 503(b)(4). *See In re Blount*, 276 B.R. at 757.

Based on the record, including a review of Exhibit C to the Motion, this Court finds that Sagona's expenses of $1,013.30 are actual and necessary and that it meets the criteria of § 503(b)(3)(B) to recover those costs as an allowed administrative expense. *See* 11 U.S.C. § 503(b)(3) (stating that "a creditor that recovers, after the court's approval, for the benefit of the estate any property transferred or concealed by the debtor" may be awarded an allowed administrative expense claim); *cf. In re Harvey*, No. 04-35576PM, 2006 WL 4481990, at *2 (Bankr. D. Md. Nov. 22, 2006) (allowing administrative expense claim under § 503(b)(3)(B) after granting retroactive approval of creditor action on behalf of the estate); *In re Zedda*, 169 B.R. 605, 608 (Bankr. E.D. La. 1994) (citing *In re Antar*, 122 B.R. 788 (Bankr. S.D. Fla. 1990) and allowing a creditor to be compensated under § 503(b)(3) without prior court approval).

Having found that Sagona may recover costs under § 503(b)(3)(B), this Court may now inquire under § 503(b)(4) whether the requested $11,643.00 in attorneys' fees are reasonable after analyzing the *Johnson* factors.

1. *Time and labor required*

The amount of $11,634.00 in requested attorneys' fees for services rendered to the estate relating to the prosecution of the Adversary Proceeding reflects 49.2 hours in partner and associate time, resulting in an overall blended hourly rate of approximately $236 per hour. Based on a review of the Motion, the Oppositions, and the record in this case, this Court finds that all but $455.00 of the fees requested were beneficial to the estate and necessary in light of the contentious

7

nature of the Adversary Proceeding.[4] The professional services rendered by Sagona, which resulted in a benefit to the estate, required the expenditure of time and effort, as well as a high degree of professional competence and expertise. Sagona initiated the Adversary Proceeding on November 4, 2018, after receiving Court approval to do so. It filed a Motion for Summary Judgment promptly on January 4, 2019, resolving the merits of the Complaint on the papers and obviating the need for a trial. The Court granted the Motion for Summary Judgment, and entered final judgment on February 19, 2019. Based on the record and the invoice included as Exhibit C to the Motion, the Court finds that Sagona prosecuted the Adversary Proceeding with economic efficiency, utilizing the least amount of time and labor necessary to do so.[5]

---

[4] To recover under § 503(b)(3)(B), and then by extension, § 503(b)(4), a creditor must act not for his own benefit, but "for the benefit of the estate." The Debtor objects to certain time entries on Exhibit C attached to the Motion, and asserts that the time entries apply to work done outside the scope of prosecuting the Adversary Proceeding and was performed for the creditor's own benefit. This Court agrees and reduces the following requested fees accordingly:

(1) $140 in fees billed on 12/10/2018 for "Receipt and review of plan";
(2) $17.50 in fees billed on 2/12/2019 for "Confer with Eric J. Derbes re: plan confirmation hearing and amendment";
(3) $35.00 in fees billed on 2/12/2019 for "Confer with Beau P. Sagona re: plan confirmation hearing and amendment":
(4) $105.00 in fees billed on 3/25/2019 for "Receipt and review of amended plan; meet with client"; and
(5) $17.50 in fees billed on 3/25/2019 for "Confer with Eric J. Derbes re: plan amendments."

This Court further reduces the requested fees for $140.00 billed on 2/8/2019 for "Travel to and from hearing on Motion for Summary Judgment." As a general matter, bankruptcy courts in Louisiana do not typically allow fees for travel for court appearances if counsel has its primary workstation within the metro area where the court is located.

[5] The Debtor objects to the Motion in part, asserting that fees should be reduced because Sagona engaged in "block-billing." *See* ECF Doc. 277, at 5. "The term 'block-billing' refers to 'the time-keeping method by which each lawyer and legal assistant enters the total daily time spent working on a case, rather than itemizing the time expended on specific tasks.'" *In re Morris*, 603 B.R. 127, 137 (Bankr. W.D. Okla. 2019) (quoting *Robinson v. City of Edmond*, 160 F.3d 1275, 1284 n.9 (10th Cir. 1998)). But "[t]he decision whether block billing indicates an unreasonable claim should remain with the trial court who should be allowed to exercise its discretion accordingly." *See id.* (citation omitted). Here, the invoice included as Exhibit C to the Motion contains only three pages of time entries, most of which have not lumped together unrelated tasks. In those few instances of block-billing, the entries appear to be related to one task, such as preparation of the reply brief in support of the motion for summary judgment, and the Court does not find

*2. Novelty and difficulty of questions involved*

The work involved in the Adversary Proceeding sought the avoidance of the donation of the Property pursuant to 11 U.S.C. §§ 548(a)(1)(A) and (B). Those provisions of the Bankruptcy Code are litigated frequently in many bankruptcy cases. Overall, the Court finds that the time Sagona spent in prosecuting the Adversary Proceeding was commensurate with the novelty and difficulty of the issues presented.

*3. Skill requisite to perform services properly*

Sagona specializes in bankruptcy matters in this district. As a result, Sagona's practical approach of prosecuting the Adversary Proceeding resolved the matter with skill and efficiency, contributing to the preservation of the estate.

*4. Preclusion of other employment*

It is unknown whether Sagona's prosecution of the Adversary Proceeding precluded it from accepting other employment, but this factor does not appear to weigh significantly in this analysis.

*5. Fee Customarily Charged*

The billing records found in Exhibit C to the Motion reflect that the hourly rates of the attorneys who worked on the Adversary Proceeding ranged from $150 per hour to $350 per hour. The attorneys' fees sought are within the range of those charged by attorneys with comparable skills in this district.

*6. Whether the fee is fixed or contingent*

Sagona is a creditor of the Debtor's estate, authorized by the Court *sua sponte* to pursue the Debtor's fraudulent transfer action. For this reason, no formal, written employment agreement

---

that it is unable to determine whether time spent on tasks was unreasonable. Therefore, the Court finds the Debtor's block-billing argument unpersuasive and overrules that objection.

appears to exist. Based upon Exhibit C to the Motion, the Court finds that Sagona performed legal work on an hourly basis, but no guarantee existed that Sagona would be paid those hourly fees. To the extent that most professional fees in bankruptcy proceedings pend final review of the Court, subject to adjustment depending on services rendered, the representation is a contingent one.

### 7. *Time limitations imposed by client or circumstances*

The time limitations imposed by the circumstances surrounding the Adversary Proceeding were not unusual or out of the ordinary for a lawsuit of its size and complexity.

### 8. *Amounts involved and results obtained*

Sagona successfully obtained a judgment which brought the Property back into Debtor's bankruptcy estate.

### 9. *Experience, reputation, and ability of professionals*

Sagona has significant experience in voidable transfers under the Bankruptcy Code in this district. The attorneys involved have extensive experience in bankruptcy actions, large and small, enabling them to perform the services described herein competently and expeditiously.

### 10. *Undesirability of the case*

To the extent that most professional fees in bankruptcy proceedings are contingent pending final review of the Court and subject to adjustment depending on services rendered, this case was somewhat undesirable.

### 11. *Nature and length of professional relationship with the client*

As mentioned above, Beau Sagona is a member of the Derbes Law Firm, LLC, and served as the Special Master in the prepetition succession of a relative of the Debtor. As a creditor of the estate who obtained this Court's approval prior to recovering property transferred or concealed by

the Debtor, Sagona may seek compensation under §§ 503(b)(3)(B) and (b)(4); therefore, this factor neither favors nor disfavors a conclusion that the compensation that Sagona seeks is reasonable.

*12. Awards in similar cases*

Based upon its experience, the Court finds that the compensation requested is consistent with awards in other cases.

## CONCLUSION

For the reasons explained above, this Court finds and concludes that (i) Sagona qualifies for reimbursement of actual and necessary expenses, other than attorneys' fees, pursuant to § 503(b)(3)(B); (ii) because its expenses are allowable under § 503(b)(3)(B), it is entitled to reasonable compensation for professional services under § 503(b)(4); (iii) Sagona's expenses of $1,013.30 are actual, necessary, reasonable, and reimbursable under § 503(b)(3)(B); and (iv) Sagona's attorneys' fees in the amount of $11,179.00, the sum remaining after a reduction of $455.00, are reasonable, beneficial and necessary, are associated with the prosecution of the Adversary Proceeding, and meet all applicable requirements of § 503(b)(4) and Fifth Circuit precedent. Accordingly,

**IT IS ORDERED** that the Motion is GRANTED IN PART AND DENIED IN PART in accordance with the reasons herein;

**IT IS FURTHER ORDERED** that the Objections are SUSTAINED IN PART AND OVERRULED IN PART in accordance with the reasons herein;

**IT IS FURTHER ORDERED** that Sagona is granted an allowed administrative expense claim in the amount of $1,013.30 under § 503(b)(3)(B);

**IT IS FURTHER ORDERED** that Sagona is granted an allowed administrative expense claim in the amount of $11,179.00 under § 503(b)(4); and

**IT IS FURTHER ORDERED** that Sagona shall immediately serve a copy of this Order on the required parties who will not receive notice through the ECF System pursuant to the Federal Rules of Bankruptcy Procedure and the Local Rules Bankruptcy Rules and file a certificate of service to that effect within three (3) days.

New Orleans, Louisiana, June 23, 2020.

MEREDITH S. GRABILL
UNITED STATES BANKRUPTCY JUDGE